SUE HUSTON, MARGARET MEAD, LOUISE KRIEGER, ROSE MUIR, PATRICIA MURRAY, and DAVID J. KRIEGER, TRUSTEE *v.* DEPARTMENT OF REVENUE

David J. Krieger, Black, Kendall, Tremaine, Boothe & Higgins, Portland, represented plaintiffs.

Alfred B. Thomas, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered July 18, 1975.

CARL N. BYERS, Judge Pro Tempore.

This case concerns the true cash value of the land only of property known as the Broadmoor Golf Course located in Portland, Oregon, and described as Sec 13, 1 N, 1 E, Tax Lots 54 and 227. Plaintiffs appeal from an assessed value of $844,200 as established by the Multnomah County Board of Equalization and upheld by the Department of Revenue in its Order No. VL 74-259 (dated May 28, 1974). Plaintiffs contend that the true cash value of the land as of January 1, 1973, was not more than $600,000.

The land in question is located between the Portland Airport and N.E. Columbia Boulevard. Except for 3½ acres of "benchland" fronting on N.E. Columbia Boulevard, most of it is low-lying land once subject to annual flooding. The land is intersected by two sloughs covering approximately 14 acres. Also,

seven acres obtained in a trade with the Airport and a 40-acre parcel of swampy area are not used as part of the golf course, leaving approximately 130 acres of golf course land.

The golf course is an 18-hole course originally constructed in 1931 or 1932. It is described as an older course with no sand traps and a limited sprinkler system. Although the $3\frac{1}{2}$ acres of land facing N.E. Columbia Boulevard are zoned industrial, the evidence in this case indicates that the overall highest and best use of the property as a unit is as a golf course.

Plaintiffs' first two witnesses, Mr. Jopell Goodling, the superintendent of the course, and Mr. Lee Brune, President of Golf Management, Inc., described the course and its deficiencies. Mr. Goodling indicated that the course is not tiled, has no drainage system, has small greens and tees and is generally of an inexpensive type of construction. Mr. Brune, former golf professional at the course for two years, also discussed some of the features of the course which make it attractive or unattractive from an investor's viewpoint. He expressed the opinion that golf courses as an investment are not profitable unless made in conjunction with development of surrounding land. However, on cross-examination, Mr. Brune expressed some uncertainty about the resale value of courses such as Forest Hills which have no development property. He was unable to account for increases in the sale prices of such courses except as "tax shelters" or for other vague reasons.

Plaintiffs' expert witness, Mr. Harry W. Stepp, an appraiser experienced in appraising golf courses, indicated that although he considered all three approaches to value, he relied most on the cost approach. He felt that his conclusions arrived at by use of the cost approach were verified by the market data ap-

proach. Based on the cost approach, Mr. Stepp valued the land at $2,250 per acre for 200 acres or $450,000, and then added the cost of the improvements to the land for 18 holes at $16,500 per hole or $297,000, for a total value to the land of $747,000. Mr. Stepp stated on cross-examination that he did not employ a multiplier, normally denominated a "gross rent multiplier," to determine the ratio between income from green fees and the selling price of comparable golf courses. However, he admitted he may have used such a technique in the past. The discussion in his appraisal report of the income approach does mention this ratio for several of the comparable sales, which would indicate this was a factor considered by him.

Defendant's sole witness was Mr. LeRoy C. Gibson, county appraiser for Multnomah County. Mr. Gibson likewise used both the cost approach and the market data approach in determining the value of the subject property. Using the market data approach, Mr. Gibson extracted from several comparable sales a multiplier or ratio between the green fee income realized by the courses and the sales prices of the courses. Based upon a multiplier of 5.6, he determined that the subject property had a fair market value of approximately $976,000. Utilizing the cost approach and based upon comparable sales of bare land, Mr. Gibson determined that the bare land value of the subject would be $491,100 and a depreciated cost for the 18 holes of $367,200, for a total land value of $858,300.

In viewing the work of the two appraisers, the court finds that they are basically in agreement except for the selection of specific unit values. For example, Mr. Stepp used a bare land value of $2,250 per acre while Mr. Gibson used a value of $3,600 per acre. The court questions the analysis by Mr. Stepp which values the low-lying bare land for golf course purposes at $2,250 per acre but values it $3,500 per acre for "alternate

uses." No explanation was made at the trial or in his report to account for this difference. On the whole, the defendant's comparable sales, from which the $3,600 value was extracted, appeared to be the most comparable of the bare land sales.

The appraisers also differed in their "per hole" cost of construction of the improvements to the land, primarily because Mr. Gibson viewed the subject property as a Class III course and Mr. Stepp viewed the property as a Class II course. Both gentlemen relied upon data extracted from the Stevens Valuation Quarterly (1973) of Marshall & Swift Publication Co., commonly referred to as the Marshall-Stevens Valuation Service. That service indicates that the typical 1973 cost per hole for golf course improvements ranged from $20,000 to $23,000 for a Class III course and $17,-000 to $20,000 for a Class II course. Mr. Gibson chose the Class III value and adjusted it upward for the increase in cost since the publication date, while Mr. Stepp selected an overall cost approximately halfway between both classes. Mr. Stepp further adjusted his cost downward by 22½ percent to reflect the less-than-complete sprinkler system of the subject course. Mr. Stepp did not depreciate his cost figures while Mr. Gibson adjusted his costs approximately $3,000 per hole to reflect the depreciation since construction.

As is often the case, classifications of this kind are easier to devise than to apply. In the court's opinion, the subject property does not appear to be clearly either a Class II or a Class III course. Some of its virtues, such as the large trees, would fall in the category of Class III while its deficiencies, such as the small tees and greens, would fall in Class II. On the whole, the court finds the conclusions drawn by Mr. Gibson to be more consistent and persuasive. While there are points upon which the court would differ with Mr. Gibson in his appraisal, those differences would

not reduce the value below the assessed valuation from which the plaintiffs appeal. Further, the court finds that the indicators of value from the other approaches tend to support the defendant's position.

Therefore, the court finds that the plaintiffs have failed to carry their burden of proof. The preponderance of the evidence would support a value of at least $844,200, which the court finds is the true cash value of the subject land as of January 1, 1973. The defendant's Order No. VL 74-259 is affirmed.